Polly A. Atkinson
Gregory Kasper
UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Denver Regional Office
Byron Rogers Federal Building
1961 Stout Street, Suite 1700
Denver, CO 80294
Telephone: 303-844-1000
Email: AtkinsonP@SEC.GOV

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 21- |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | Jury Trial Demanded |
| OUTDOOR CAPITAL PARTNERS, LLC AND SAMUEL J. MANCINI, | |
| Defendants, | |
| and | |
| OCP ITALIA FUND LLC, OCPITALUS LLC, and DIANA L. MANCINI, | |
| Relief Defendants. | |

Plaintiff, United States Securities and Exchange Commission (the "SEC"), Byron Rogers Federal Building, 1961 Stout Street, Suite 1700, Denver, CO 80294, alleges as follows against Defendants Outdoor Capital Partners, LLC ("Outdoor Capital") and Samuel J. Mancini ("Mancini") (collectively, "Defendants") and Relief Defendants OCP Italia Fund LLC, OCPITALUS LLC, and Diana L. Mancini, whose last known addresses or principal places of business are set forth below:

| Defendants: | Relief Defendants: |
|---|---|
| Outdoor Capital Partners, LLC<br>250 Filmore Street, Suite 367<br>Denver, CO 80206 | OCP Italia Fund LLC<br>250 Filmore Street, Suite 367<br>Denver, CO 80206 |
| Samuel J. Mancini<br>1166 N. Humboldt Street<br>Denver, CO 80218 | OCPITALUS LLC<br>250 Filmore Street, Suite 367<br>Denver, CO 80206 |
| | Diana L. Mancini<br>1166 N. Humboldt Street<br>Denver, CO 80218 |

## SUMMARY

1.      Since at least December 2019, Outdoor Capital and its managing director, Mancini, have conducted, and continue to conduct, ongoing fraudulent securities offerings through a private fund they manage, OCP Italia Fund LLC (the "Fund").

2.      Defendants told investors that the Fund was raising money to purchase controlling interests in and operate three Italian cycling-related companies.

3.      Collectively, from at least December 2019 through May 2021, Defendants raised almost $11.5 million for the Fund from at least 40 investors throughout the United States and abroad through two fraudulent offerings.

4.      First, starting in December 2019, Defendants offered and sold investors membership units in the Fund (the "Units Offering"). In connection with the Units Offering, Defendants made materially false and misleading statements and omissions to investors regarding Mancini's personal investment in the Fund, the amount of money raised by the Fund, the accounting professionals engaged by the Fund, the use of investor funds, and Mancini's education. In addition to making materially false and misleading statements, Defendants also defrauded investors by, among other things, misappropriating and misusing some investor

money to pay Mancini and his wife and to make Ponzi-like payments to earlier investors. Mancini also concealed his fraud by sending false and documents to investors.

5.      Second, starting in at least January 2021, Defendants offered and sold short-term, high-interest loan contracts for the Fund (the "Notes Offering"). In connection with the Notes Offering, Defendants falsely told investors that their funds would be used to purchase bicycle helmet inventory, when in reality, Defendants misappropriated and misused some investor money to pay Mancini and his wife and to make Ponzi-like payments to earlier investors.

6.      As a result of the conduct described herein, Defendants violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF

7.      The SEC brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. § 77t(b) and (d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

8.      The SEC seeks temporary, preliminary, and permanent injunctions; disgorgement of ill-gotten gains derived from the conduct alleged in the Complaint plus prejudgment interest thereon; civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 78u(d)(3)]; an order prohibiting Defendants from participating, directly or indirectly, in any offering of securities; an order barring Mancini from serving as an officer or director of a public company; and such other relief that the court may deem appropriate.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10.      In connection with the conduct alleged in the Complaint, Defendants, directly or indirectly, made use of the means or instruments of transportation or communication, or instrumentalities of interstate commerce, or of the mails, or the facilities or a national securities exchange. Defendants caused wire transfers to be made and received and used emails and the internet to conduct their fraudulent activities.

11.      Venue is proper in the District of New Jersey pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa]. At least three of the harmed Fund investors reside in New Jersey. As such, certain of the acts, practices, transactions, and courses of business, including, but not limited to, wire transfers, alleged in this complaint occurred in this District.

## DEFENDANTS

12.      **Outdoor Capital** is a Delaware limited liability company formed in 2019 with its principal place of business in Denver, Colorado. It purports to be a venture capital and private equity firm. Outdoor Capital is the manager of the Fund.

13.      **Samuel J. Mancini (fka Samuel J. Gamel)**, age 55, resides in Denver, Colorado. Mancini is one of two Managing Directors of Outdoor Capital. He is the sole signatory on all domestic bank accounts of the Fund and a signatory on all domestic bank accounts of OCPITALUS. He communicated directly with investors and prospective investors regarding the Fund's offerings.

## RELIEF DEFENDANTS

14.    **The Fund** is a Delaware limited liability company with its principal place of business in Denver, Colorado. It is a private fund that raised money from investors for the stated purpose of acquiring controlling interests in and operating three Italian companies in the bicycle industry. All known offering proceeds were deposited into accounts held in the name of the Fund. Neither the Fund nor its offerings are registered with the SEC in any capacity.

15.    **OCPITALUS LLC** is a Delaware limited liability company with its principal place of business in Denver, Colorado. It is wholly owned by the Fund. It was created to perform retail operations for companies acquired by the Fund. Mancini transferred approximately $2.6 million in investor funds from accounts held by the Fund to accounts held by OCPITALUS.

16.    **Diana L. Mancini,** age 45, resides in Denver, Colorado. Diana Mancini is Mancini's wife; she has no known role with the Fund or OCPITALUS. Mancini transferred approximately $291,000 in investor funds from accounts held by the Fund and OCPITALUS to an account in Diana Mancini's name.

## FACTS

**Defendants Raised Millions for the Fund from Investors**

17.    Between December 2019 and present (the "Relevant Period"), Defendants raised at least $11.465 million for the Fund from at least 40 investors through two distinct securities offerings: the Units Offering and the Notes Offering.

18.    The Units Offering raised at least $9.47 million from at least 23 investors. The Notes Offering raised at least $300,000 from at least three investors. Defendants raised an additional $1.695 million for the Fund from another 14 investors.  At this time, the SEC does not know which offering they participated in.

<u>The Units Offering</u>

19.     Beginning in at least December 2019, Defendants offered and sold membership units in the Fund to investors throughout the United States and abroad for the stated purpose of raising $20 million to acquire controlling interests in three Italian companies in the cycling industry: a bicycle company ("Target 1"), a helmet company ("Target 2"), and an apparel company ("Target 3"). After obtaining controlling interests, the Fund intended to operate the companies, boosting revenue by implementing a turnaround plan focused on a direct-to-customer sales strategy and digital branding and marketing for the U.S. cycling market.

20.     While soliciting investors, Mancini emailed at least five documents to interested potential investors: (i) the OCP Italia Fund Term Sheet; (ii) the OCP Italia Fund Executive Summary; (iii) the OCP Cycling Industry Investment Thesis; (iv) a pro forma profit and loss statement; and (v) an investment return analysis and sources and uses chart (collectively, the "Offering Documents"). Mancini as a Managing Director of Outdoor Capital had final authority over the content and distribution of documents distributed to investors. Mancini also solicited investments by making a variety of oral statements, as well as composing and sending text messages and emails to prospective investors.

21.     The Offering Documents provided to potential investors in the Units Offering promised distributions to investors equal to 70 or 75 percent of the Fund's operating profits and between 50 and 100 percent of the proceeds from the Fund's contemplated resale of the cycling industry companies. The Offering Documents projected that investors could achieve a rate of return of 40 or 45 percent.

The Notes Offering

22.    Beginning in at least January 2021, Defendants solicited other investors to invest in short-term, high-interest notes offered by the Fund. Investors in the Notes Offering were typically promised approximately $15,000 in profits for loaning the Fund $100,000 for 30 days.

23.    Mancini made oral statements to the potential investors that the money raised from the Notes Offering would be pooled and used to buy discounted bike helmet inventory that the Fund could sell for a profit.

The Units and Notes are Both Securities

24.    Defendants offered and sold investments that are "securities" as defined in Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act [15 U.S.C. §§ 77b(a)(1) and 78c(a)(10)]. Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" to include, among other things, any "investment contract" or "note." The Units are investment contracts, and therefore securities, because (i) investors invested millions of dollars into the Fund in exchange for the membership units; (ii) the investors' money was pooled together and investors expected distributions of profits and losses proportional to their investment; and (iii) the investors were passive participants in the Fund and expected profits derived from the Fund's operations based on the efforts of the Fund's manager.

25.    The Notes are securities because: (i) the Fund entered into the loan contracts to finance a substantial inventory purchase; (ii) the investors were primarily motivated by the high interest rate payable under the loan contracts and did not enter into the loan contracts for any consumer purpose; and (iii) investors viewed the loan as an investment with a guaranteed 15 percent return.

**Defendants Made Material Misrepresentations and Omissions in the Units Offering**

26.    Throughout the Relevant Period, in written documents sent to investors and prospective investors and in oral communications made to investors and prospective investors, Defendants made false and misleading statements regarding Mancini's personal contribution to the Fund, the amount of capital raised by the Fund, the Fund's hiring of accounting professionals, Mancini's education, and the use of investor funds. As a Managing Director of Outdoor Capital, Mancini made these statements and omissions and distributed documents as an agent of Outdoor Capital and Mancini's statements are imputed to Outdoor Capital. Defendants acted at least recklessly and negligently in making the false and misleading statements described below.

Misstatements Concerning Mancini's Personal Investment in the Fund

27.    On numerous occasions between January 2020 and May 2021, Mancini orally told investors and potential investors that he was investing millions of dollars of his own money into the Fund.

28.    The Offering Documents that Outdoor Capital and Mancini distributed to investors and potential investors also contained multiple statements promising that Mancini was invested in the Fund, including: (i) "Senior management is co-invested," (ii) "[Outdoor Capital] is raising up to $15MM alongside its founders $5MM," (iii) "[Outdoor Capital] will participate as both a member investor and a manager," and (iv) "Manager investment $2.5M minimum."

29.    A capitalization table that Outdoor Capital and Mancini gave to the Fund's largest investor ("Investor 38") to induce its March 2021 investment claimed that Mancini invested a total of $9.4 million into the Fund: $1.2 million personally and $8.2 million as a trustee of his family trusts.

30.     These statements were false when made. Mancini never invested any appreciable amount of money in the Fund, either directly or as trustee of any trust.

31.     Mancini's oral and written statements regarding his purported personal past and future investments in the Fund were also misleading when made because he omitted to disclose that he was not in a financial position to make such an investment.

32.     Defendants knew or were reckless in not knowing, and should have known, that their statements concerning Mancini's personal investment in the Fund were false and misleading. Mancini has full knowledge of and control over his personal finances. He knew at the time of the misstatements that he had not invested millions of dollars of his own money in the Fund. For the same reasons, Defendants were negligent in making these false and misleading statements concerning Mancini's personal investment in the Fund.

33.     The above misrepresentations regarding Mancini's personal investment in the Fund were material to investors and potential investors. Mancini's personal participation in the Fund was a critical and deciding factor for many of the Fund investors, and a reasonable investor would consider the fact that the Fund's management's financial interests were aligned with their own important in making an investment decision.

Misstatements Concerning Money Raised by the Fund

34.     Mancini orally told several investors and potential investors as early as spring 2020 and continuing through, at least, spring 2021 that the Fund had already raised enough money to pay for the proposed acquisitions and expected the deals to close imminently.

35.     For example, prior to Investor 38's decision to invest in March 2021, Mancini told Investor 38 that, with Investor 38's contribution, the Fund would have more than enough money to close on the proposed acquisitions of Target 1 and Target 2. To induce its investment,

Mancini provided Investor 38 with a schedule showing that the Fund already had $10.24 million on deposit with an Italian escrow agent and, immediately after Investor 38's investment, that amount would increase to more than $15 million.

36.    These statements about the amount of capital the Fund had raised were false and misleading when made. Even with Investor 38's investment, the Fund has never raised enough money to close on the proposed transactions. According to the Offering Documents, the money needed to complete the three proposed transactions totaled more than $15 million, which is significantly more than the Fund raised from all offerings throughout the Relevant Period. Prior to Investor 38's March 2021 investment, the Fund had only $16,877 cash on hand and had sent only $12,000 to the Italian escrow agent, not $10.24 million.

37.    Defendants knew or were reckless in not knowing, and should have known, that their statements concerning the amount of capital the Fund had raised were false and misleading. Defendants had full knowledge of and control over the Fund's bank accounts, and, therefore, knew that the Fund has never raised enough money from investors or otherwise maintained a bank account balance sufficient to pay for the proposed transactions. For the same reasons, Defendants were negligent in making these false and misleading statements concerning the amount of capital raised by the Fund.

38.    The above misrepresentations that the Fund had raised sufficient capital to compete the transactions and that the transactions would be completed imminently were material to investors because, if true, the fact that sufficient capital had already been raised to complete the transactions would make it more likely that the Fund would accomplish its stated business plan and generate proceeds and profits for investors.

<u>Misstatements Concerning the Fund's Hiring of Accounting Professionals</u>

39.     Defendants also misrepresented the Fund's engagement of accounting professionals by stating in the Offering Documents that "OCP has assembled a team of industry professionals and a stellar support and analytic team including ... [National Accounting Firm] [for] consulting and accounting services."

40.     Consistent with the Offering Documents, Mancini told a group of investors in a January 20, 2021 email that he was "meeting with [National Accounting Firm] in early February to finalize [the Fund's] year end" financials.

41.     These statements were false and misleading when made. The National Accounting Firm was engaged by Outdoor Capital in October 2019 to perform tax consulting services. The National Accounting Firm was never engaged by Outdoor Capital to provide accounting or auditing services, and it was never engaged by the Fund in any capacity. Moreover, the National Accounting Firm never performed any accounting or auditing services for Outdoor Capital or the Fund.

42.     Defendants knew or were reckless in not knowing, and should have known, that their statements concerning the Fund's hiring of accounting professionals were false and misleading. Mancini executed the October 2019 The National Accounting Firm engagement letter on behalf of Outdoor Capital and had personal knowledge of the scope of services contracted for and performed. For the same reasons, Defendants were negligent in making these false and misleading statements concerning the Fund's accounting professionals.

43.     The above misrepresentations regarding the Fund's accounting professionals were material to investors and potential investors. A reasonable investor would consider the

engagement of a reputable, national accounting firm to be important information when making investment decisions.

Misstatements Concerning Mancini's Education

44.     Among others, Mancini solicited members of the United States Military Academy in West Point, New York ("West Point") graduating class of 1988 (the "West Point Investors") and told them, both orally and in the Offering Documents, that he was a classmate or alumnus.

45.     Mancini's statements misled the West Point Investors into believing that Mancini graduated from West Point with them, which enhanced their assessment of his trustworthiness and integrity.

46.     In fact, as the West Point Investors later discovered, Mancini was expelled from West Point before graduation for unethical conduct. Failing to disclose that Mancini was expelled from West Point before graduation for unethical conduct was a material omission that rendered the representation that he was a West Point alumnus misleading when made.

47.     Defendants knew or were reckless in not knowing, and should have known, that their statements and omissions concerning Mancini's education were misleading. Mancini knew that he did not graduate from West Point and that he was expelled before graduation for unethical conduct. That knowledge is imputed to Outdoor Capital. For the same reasons, Defendants were negligent in making these false and misleading statements concerning Mancini's education.

48.     The above misrepresentations and omissions regarding Mancini's education were material to investors and potential investors. The representation that Mancini was a West Point alumnus was material to investors because it enhanced their assessment of his trustworthiness and integrity, and the fact that he did not graduate but instead was expelled for unethical conduct

would have been important information to the West Point Investors when making a decision to invest with Mancini.

<u>Misstatements Concerning Use of Investor Money</u>

49.     In the Offering Documents Mancini and Outdoor Capital sent to investors, and in communications with investors, Mancini made false and misleading statements regarding the use of investor funds.

50.     The Offering Documents represent that Outdoor Capital "will take no management fees." Similarly, Mancini told investors, in emails and otherwise, that he was taking no fees but, instead would benefit from his investment of money in the project.

51.     In addition, prior to investing in the Fund, Investor 38 negotiated the terms of a Membership Interest Subscription and Purchase Agreement that stated that Investor 38's purchase price would be used "solely for the [Target 1] acquisition" and gave Investor 38 the right to terminate the Subscription Agreement if the Fund did not close on the acquisition of Target 1 within 15 days of Investor 38's investment.

52.     These statements were false when made. Mancini used some of the money from the Units Offering to pay himself and his wife even while claiming to be taking no compensation. He also used some of the money from the Units Offering to make Ponzi-like payments to earlier investors. Failing to disclose that Mancini was using proceeds from the Units Offering to pay himself, his wife, and earlier investors rendered the representation concerning uses of the proceeds misleading when made.

53.     In addition, within one day after Investor 38 wired its investment to the Fund, the Fund spent the entire $5 million as follows: $255,000 used to make Ponzi-like payments to other investors, $7,500 misappropriated for Mancini's personal benefit, $563,742 used to pay various

Fund expenses including legal and marketing fees, and $4.18 million sent to an Italian escrow agent to fund an escrow account for the acquisition of Target 2, not Target 1. None of Investor 38's investment was used for the acquisition of Target 1 and, within one day of the investment, none of the investment was left to return to Investor 38.

54.     Defendants knew or were reckless in not knowing, and should have known, that their statements concerning the use of proceeds from the Units Offering were false and misleading. Defendants had full knowledge of and control over the Fund's bank accounts and knew that money raised from investors in the Units Offering was used for other than the stated purpose. For the same reasons, Defendants were negligent in making these false and misleading statements concerning the use of Units Offering proceeds.

55.     The above misrepresentations regarding the use of Units Offering proceeds were material to investors and potential investors. The use of offering proceeds is inherently material to a reasonable investor.

**Mancini Made Material Misrepresentations in Connection with the Notes Offering**

56.     Throughout the Notes Offering Mancini orally told investors that he was raising capital because the Fund had a special opportunity to purchase discounted bike helmet inventory and resell it for a profit.

57.     Instead, Mancini used the money from the Notes Offering to pay himself and other Outdoor Capital employees and to make Ponzi-like payments to earlier investors, among other things.

58.     Defendants' statements concerning uses of Notes Offering proceeds were false when made.

14

59.    Failing to disclose that Mancini used proceeds from the Notes Offering for other than the stated purpose was a material omission that also rendered representation concerning the use of Notes Offering proceeds misleading.

60.    Defendants knew or were reckless in not knowing, and should have known, that their statements concerning the use of Notes Offering proceeds were false and misleading. Defendants had full knowledge of and control over the Fund's bank accounts and knew that money raised from investors in the Notes Offering was not used for purchasing inventory. For the same reasons, Defendants were negligent in making these false and misleading statements concerning the use of Notes Offering proceeds.

61.    The above false and misleading statements regarding the use of Notes Offering proceeds were material to investors and potential investors. The use of offering proceeds is inherently material to a reasonable investor.

62.    Mancini made the statements and omissions about the use of the proceeds of the Note Offering as an agent of Outdoor Capital and Mancini's statements are imputed to Outdoor Capital.

**<u>Defendants Engaged in Fraudulent and Deceptive Conduct in Both Offerings</u>**

63.    In addition to the material misrepresentations and omissions, which are fraudulent and deceptive conduct, Defendants engaged in numerous additional instances of conduct that acted as a fraud and deceit on investors. In engaging in the fraudulent and deceptive conduct Mancini acted as an agent of Outdoor Capital and his conduct is imputed to Outdoor Capital. Defendants' acted at least recklessly and negligently in engaging in the fraudulent and deceptive conduct described below.

Defendants Made Ponzi-Like Payments with Investor Money.

64.     Defendants have engaged in fraudulent and deceptive conduct by using over $800,000 of the investors' money to make Ponzi-like payments to investors demanding return of their investments.

65.     At the time Defendants made payments to existing investors demanding return of their investments, the Fund did not have sufficient assets from sources other than new investor money to make the payments. The Fund's bank account was depleted and incoming investor money was the only way Defendants could pay other investors

66.     Defendants knew or were reckless in not knowing, and should have known, that by making Ponzi-like payments to investors they were engaging in fraudulent and deceptive conduct. Defendants had full knowledge of and control over the Fund's bank accounts and knew the Fund did not have sufficient assets from sources other than new investor money to make payments to investors demanding return of their investments. For the same reasons, Defendants were negligent in making Ponzi-like payments to investors.

Defendants Misappropriated Investor Money for Personal Use.

67.     The Offering Documents represent that Outdoor Capital "will take no management fees."

68.     Between January 2020 and May 2021, however, Mancini, as the managing director of Outdoor Capital transferred at least $106,000 to his own personal accounts and at least $291,000 to accounts for his wife directly from the Fund's accounts and indirectly through the OCPITALUS operating account.

69.     Defendants knew or were reckless in not knowing, and should have known, that by making payments to Mancini and Mancini's wife they were engaging in fraudulent and

deceptive conduct. Defendants knew or were reckless in not knowing, and should have known, that the Fund's Offering Documents did not entitle Mancini or his wife to payments from investor funds. For the same reasons, Defendants were negligent in making payments to Mancini and his wife.

Mancini Distributed Falsified Documents to Investors

70.    By at least September 2020, some Fund investors began to ask Mancini for Fund financial statements and proof of Fund assets. In response to these investor demands, and in an effort to avoid detection of Defendants' fraud, Mancini created and distributed a variety of false documents to certain investors.

False Fund Financial Documents

71.    On or about June 8, 2020, Mancini prepared and sent investors an update email stating that the Fund was closing to new investors with $18.25 million and 14 members.

72.    The information in this investor update was false. As of June 8, 2020, the Fund had raised only $3.1 million from investors.

73.    On or about December 4, 2020, Mancini emailed an investor a use of proceeds chart for the Fund dated November 2020. According to the chart, the Fund had raised a total of $19.5 million as follows: $5.25 million investors committed and delivered, $2.5 million investors committed not delivered, $10 million Mancini committed and paid, $1.75 million Mancini committed waiting for release. The chart also identified the location of Fund assets totaling $15,473,406 as follows: $750,000 cash at InBank, $3,523,406 cash at Intesa Bank, $9,250,000 in an Italian escrow account for the acquisition of Target 1, and $1,950,000 cash at Morgan Stanley.

74.    The information in the November 2020 use of proceeds chart regarding the money raised by the Fund was false. As of November 2020, the Fund had raised only approximately $4.925 million from investors.

75.    The information in the November 2020 use of proceeds chart about Mancini's investment was also false. Mancini did not invest any appreciable amount of his own funds at any time.

76.    The information in the November 2020 use of proceeds chart regarding the amount and location of the Fund's assets was also false. As of November 30, 2020, the Fund's InBank account was overdrawn with a balance of -$5,105.03 (not $750,000) and its Morgan Stanley account was overdrawn with a balance of -$125.63 (not $1.95 million).

77.    Furthermore, the Fund had transferred only $1.4 million to the Italian escrow account for the Target 1 acquisition, not $9.25 million as represented in the November 2020 use of proceeds chart.

78.    On or about January 20, 2021, Mancini emailed an investor a draft Fund balance sheet for year-end 2020 and a capitalization table. The draft year-end 2020 balance sheet identified Fund assets totaling $13,619,743 including, among other things, $5,000,000 cash at Intesa Bank, $443,774 cash at Morgan Stanley, and $4,399,542 cash at InBank. The capitalization table listed investments totaling $14.675 million from 29 investors as of December 31, 2020. All of the investor names are redacted except for the Mancini Family Trust IV LLC, which purportedly invested $5.5 million, and Mancini Family Trust V LLC, which purportedly invested $4 million.

79.    The information in the December 2020 balance sheet was false. As of December 31, 2020, the Fund had account balances of $0 at both InBank and Morgan Stanley.

80.    The information in the December 2020 capitalization table was also false. As of December 31, 2021, the Fund had raised only $4.925 million from investors. Additionally, neither Mancini Family Trust IV LLC nor the Mancini Family Trust V LLC invested money in the Fund in any amount at any time.

Falsified Fund Bank Statements

81.    On or about December 10, 2020, Mancini sent an investor an email attaching a purported bank statement from InBank for a Fund account with an account number ending in 2285 dated November 30, 2020, with an account balance of $2,970,027.53 as of November 1, 2020 and $2,995,105.03 as of November 30, 2020.

82.    The InBank account statement was falsified. As of November 1, 2020, the Fund's InBank account ending in 2285 had a $0 balance and as of November 30, 2020, the account was overdrawn with a negative balance of -$5,105.03. Additionally, the statement that Mancini emailed to the investor differed from the bank's records in that it (i) eliminated a dozen withdrawals totaling over $30,000 and (ii) altered the description of an outgoing wire so that it appeared as if the beneficiary was an Outdoor Capital employee instead of Mancini's wife.

83.    On or about February 8, 2021, an investor visited Mancini's office in Denver, Colorado. Mancini invited the investor to look at an account statement from Intesa Bank on his computer screen. The account statement showed an OCP Italia SrL account with an account number ending in 3529 dated January 27, 2021, with an account balance of €4,999,251.32.

84.    The Intesa account statement was falsified. As of January 27, 2021 the balance in account ending 3529 was only €1,494.92.

85.     During the same February 2021 meeting, Mancini gave the investor a paper copy of a purported bank statement from Alpine Bank for a Fund account with an account number ending in 1127 dated February 5, 2021, with an account balance of $2,547,586.47.

86.     The Alpine Bank statement was falsified. As of February 5, 2021, the balance in the Fund's account ending in 1127 was only $22,586.47. Additionally, the account statement that Mancini gave to the investor differed from the bank's records in that (i) it showed a $2,500,000 incoming wire on February 3, 2021 that does not exist in the bank's records and (ii) the descriptions of several incoming and outgoing wires were altered.

Falsified Bank Emails

87.     On or about December 1, 2020, Mancini forwarded an investor an email purportedly from an employee of Intesa Bank in Italy that showed account balances for two OCP Italia Fund accounts at Intesa bank: a U.S. dollar account with an account number ending in 3529 with a balance of $16,462.32 and a euro account with an account number ending in 4002 with a balance of €3,507,406.67.

88.     The December 2020 email from the Intesa banker was falsified. In particular, the account balance numbers were changed.

89.     On or about December 29, 2020, Mancini forwarded a group of investors an email purportedly from an employee of InBank stating that the bank had approved Mancini's application for a personal loan.

90.     The December 2020 email from the InBank banker was falsified. The email does not exist on the bank's email servers.

91.     On or about January 27, 2021, Mancini forwarded an investor an email purportedly from an employee of Intesa Bank in Italy that attached an Intesa bank statement for

an OCP Italia SrL account with an account number ending in 3529 with an account balance of €4,999,251.32.

92.    The January 2021 email from the Intesa banker was falsified. In particular, the account balance for accounting ending in 3529 as of January 27, 2021 was only €1,494.92,

93.    On or about March 17, 2021, Mancini forwarded an investor an email purportedly from an employee of Alpine Bank that explained that the bank was at fault for failing to send a wire to the investor who was expecting his investment to be redeemed.

94.    The March 2021 email from the Alpine banker was falsified. The email does not exist on the bank's email servers.

**<u>Defendants' Conduct was in the Offer, Purchase and Sale of Securities.</u>**

95.    Through the Offering Documents, other written communications and oral solicitations, Defendants offered and sold securities in the form of the Units and the Notes to at least 40 investors.

96.    The misstatements and omissions alleged herein were made and disseminated by Defendants to induce investors to buy the securities offered through the Units and Notes offerings.

97.    For example, a number of the misstatements and omissions alleged herein were made in written documents disseminated to investors by Defendants, such as the Offering Documents, text messages, and emails sent to investors and prospective investors.

98.    As such, Defendants made and disseminated material misstatements and omissions in the offer or sale of securities as defined in Section 2(a)(1) of the Securities Act and in connection with the purchase or sale of securities as defined in Section 3(a)(10) of the Exchange Act [15 U.S.C. §§ 77b(a)(1) and 78c(a)(10)].

99.    In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, the means or instrumentalities of interstate commerce, or of the mails, including soliciting investors located in New Jersey and other states by telephone and email, providing documents containing false and misleading statements to investors via email, and obtaining funds from those investors through interstate commerce.

**Mancini and Relief Defendants Received Proceeds from Defendants' Fraud**

100.    Mancini and each of the Relief Defendants received proceeds from Defendant's fraud for which they provided no reciprocal goods or services, and to which they have no legitimate claim. As a result, those funds should be returned to the investors the Defendants defrauded.

## FIRST CLAIM FOR RELIEF

**Fraud—Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

101.    The SEC realleges and incorporates by reference paragraphs 1 through 100 as though fully set forth herein.

102.    By virtue of the foregoing, Mancini and Outdoor Capital, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts,

practices or courses of business which operated or would operate as a fraud or deceit upon another person.

103.     By reason of the conduct described above, Mancini and Outdoor Capital, directly or indirectly, violated, and unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(b)].

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities—Violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)]

104.     The SEC realleges and incorporates by reference paragraphs 1 through 100 as though fully set forth herein.

105.     By virtue of the foregoing, Mancini and Outdoor Capital, have, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (1) employed a device, scheme, or artifice to defraud with scienter; (2) obtained money or property by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

106.     Accordingly, Mancini and Outdoor Capital violated and, unless restrained and enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Disgorgement from Relief Defendants – Pursuant to Section 6501 of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 and Equitable Principles

107.     The SEC realleges and incorporates by reference paragraphs 1 through 100 as though fully set forth herein.

108.    Relief Defendant OCP Italia Fund LLC, OCPITALUS LLC, and Diana L. Mancini each received and held proceeds of the fraud.

109.    Relief Defendant OCP Italia Fund LLC, OCPITALUS LLC, and Diana L. Mancini have no legitimate claim to these proceeds, having obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds, and therefore has been unjustly enriched.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the SEC respectfully requires that this Court:

### **I.**

Find that the Defendants committed the violations alleged in this Complaint;

### **II.**

Enter an injunction, in a form consistent with Rule 65 if the Federal Rules of Civil Procedure, permanently restraining and enjoining each of the Defendants from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. §77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### **III.**

Enter an injunction permanently restraining and enjoining each of the Defendants from participating, directly or indirectly, in any offering of securities, provided, however, that such injunction shall not prevent Mancini from purchasing or selling securities for his own personal account.

### **IV.**

Enter an order barring Mancini from serving as an officer or director of a publically held company.

**V.**

Order Defendants and Relief Defendants to disgorge all ill-gotten gains, together with pre-judgment interest, derived from the activities set forth in this Complaint;

**VI.**

Order Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**VII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VIII.**

Grant such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

The SEC demands a trial by jury on all claims so triable.

Dated: July 16, 2021

Respectfully Submitted,

_s/ Polly Atkinson_
Polly Atkinson
Gregory A. Kasper
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, Co 80294-1961
(303) 844-1026
(303) 844-1046 (Atkinson)
Kasperg@Sec.Gov
Atkinsonp@Sec.Gov