United States District Court
District of New Jersey

United States Securities and
Exchange Commission,
Plaintiff

vs.

Outdoor Capital Partners LLC
and Samuel J. Mancini
Defendents

and

OCP Italia Fund LLC, OCPITALUS LLC
and Diana Mancini

Relief Defendents

Civil Action No. 21-13813-CCC-MAH

Answer of Defendant
Samuel J. Mancini

Defendant Samuel J. Mancini ("Sam Mancini") answers Plaintiff US Securities and Exchange Commission's Complaint ("Complaint") as Follows:

1. This Statement is false.

2. Sam Mancini admits that the Fund did raise money and did invest in the businesses as communicated to investors according to the plan.

3. Incorrect. Judge Cecchi has set the amount at the defendants criminal sentencing, in March 2024, in the amount of $_____ and as agreed to by the Assistant US Attorney that same day. And as defined in the order dated_____

4. Sam Mancini disagrees with this statement.

5. Statement is incorrect.

6. Sam Mancini lacks the legal knowledge to form a belief of any securities law.

7. Paragraph 7 is a legal statement concerning the SEC's statutory authority, which requires no response by Sam Mancini.

8. Paragraph 8 is a statement characterizing the relief sought by the SEC which requires no response by Sam Mancini. Sam Mancini denies that the SEC is entitled to relief from him. He Misused no money for his own gain.

9. Same as 7.

10. Same as 7

11. Same as 7.

12. Outdoor Capital Partners is a Delaware Limited Liability Company formed in 2019. It is no longer active.

13. Sam Mancini acknowledges the information stated in item 13 as true.

14. SAm Mancini acknowledges the information stated in item 14 as true.

15. Sam Mancini acknowledges that OCPITALUS was a Delaware Limited LIablility Company, wholly owned by the FUND. It was for retail sales operations in the United STates. Sam Mancini cannot confirm how much was transferred by the FUND to OCPITALUS because he lacks access to the materials needed to confirm or deny this amount.

16. Diana Mancini is Sam Mancini's ex-wife. Funds were transferred by ADP Payroll as well as corporate payroll to Diana Mancini's checking account per verbal agreement with company officers in the exact amounts as approved via the payroll procedure and from time to time, in the exact amount of reimbursement for expenses incurred by Sam Mancini on behalf of the company and only for those purposes. Sam Mancini's payroll was transferred to Diana Mancini for the 12 previous years throughout their marriage as a matter of spouses financial approach.

17. This is incorrect. The amount and the number of investors was established at Sam Mancini's sentencing hearing per item 3 above.

18. Item 18 is unnecessarily confusing in conjucntion with item 17 and item 3 above and should be removed.

19. Sam Mancini agrees with item 19 with the addition of "UP TO $20 million" not "$20 Million" and the plan also included sales via a 3 tier and direct to consumer strategies in Europe depending on the product and the market area.

20. Sam Mancini agrees that 5 documents or more were included in the offering packet, he did have final authority, however, no investments were solicited via oral or text messages.. Any oral or text messages were in answer to questions as part of the process to inform investors.

21. This is partially true. The offering documents did not project any return for investors or a rate. Certain investors requested proforma analysis of potential sale prices and subsequent returns. That is why there was a graduated scale of starting at 100% return of investment capital to investors and then a progressive split to theprincipals. In accordance with market expectations.

22. This Statement is false.

23. SAm Mancini lacks the legal background to opine on this statement.

25. Mancini agrees with this statement.

26. SAm Mancini disagrees with this statement, it is false. Acountants were hired both in the United States and in Italy as well as attorney's. Mancini never made false statements about his education, nor was it reported other than factually in documents dand in LinkedIn. Further, the use of Investor funds was exactly as stated in the "USE OF FUNDS" and signed off by each and every investor.

27. Mancini stands by this statement as true. He had worked to obtain a $5M US loan for purposes of investing as well as other monies used for expenses, and personally guaranteeing significant loans, leases and commitments for the company.

28. Sam Mancini made these statements.

29-33. Not Addressed.

34. This statement is true and was accurate at the time they were made.

35. Sam Mancini cannot opine on what an investor told the SEC.

36. Sam Mancini cannot address 36, 37, and 38 due to the fact that either it requires knowledge of what an investor was thinking or information not available to Mancini at this time.

39. This statement is false, the FUnd hired accountants in both the US and in Italy.

40. Mancini does not have access to this email to confirm it or deny it.

41. Mancini disagrees with this statement.

42. Sam Mancini disagrees with this statement.

43. Sam Mancini agrees with this statement.

44. Sam Mancini disagrees with this statement. I approached classmates and was very clear about my graduation, in fact, many of them knew my situation.

45. Sam Mancini STRONGLY disagrees with the statement. At no point did I state I graduated. Every member of the class has access to a final "roll". I have always been upset by finding out 5 days before graduation that I would not be allowed to graduate. but I never represented directly that I graduated. It is a line I would never cross.

46. Per the records obtained by the AUSA, I was not able to complete graduation because of academic reasons. The final decision on whether there was an honor violation because I marked that I missed a class for a doctor's appointment when in fact I went to the Doctor's without an express appointment was never adjudicated completely.

47. Sam Marcini disagrees with this deduction. The facts are different than represented by the SEC and AUSA and therefore this is an untrue deduction.

48. Statement is false.

49. This statement is false.

50. This statement is true.

51. Sam Mancini has no idea who Investor 38 is and cannot therefore respond to this statement.

52. Sam Mancini used funds for payroll and other expenses of the company as expressly agreed to by investors and signed by them in the offering document.

53. Same as 51 above.

54. This Statement is false.

55. No response necessary.

56. Sam Mancini does not know what "Notes Offering Mancini".

57. This statement is false.

58. Statement 58 references no document and therefore requires no response.

59. Does not require a response.

60. Sam Mancini cannot respond to this item without the actual documents they refer to.

61. requires no response.

62. Not sure what this means.

63. Items 63-66 are statements and are false and require no further comment.

67. Items 67-69 are false. Every investor approved salary payemnts to Mancini and other principals and employees. The SEC seems to misunderstand the difference between a "fee" and a "wage" payment.

70. This statement is false.

71-80. Many of these statements are false or misleading or mute when compared with Mancini's pleas agreement.

81-94. Mancini lacks the documents to refute or agree to refute that any of these claims. However, Sam Mancini does not refute certain bad acts and acts of bad faith were made by him and him alone.

95-99. These statements are made as a statement of fact following other mistatkements / mis-statements by the SEC and therefore cannot be responded to.

100. This statement is strongly denied and is refuted.

Page 4 of 5

100. This Statement is strongly denied and refuted. Further Judge Cecchi has set the entire amount to be paid back in Mancini's sentencing hearing and therefore the SEC has no standing to require additional monies to be paid by any relief defendent.

101-109 are statements by the SEC that follow items that have been made incorrectly or falsly or need to be edjudicated.

### Affirmative Defenses

1. SAm Mancini reserves the right to assett further defenses or affirmative defenses as they become available through discovery.

PLEASE NOTE. This is being prepared in prison an the typewriter does not have correction or storage ability. I apologies for type or grammer mistakes that cannot be corrected other than via written in by pen.   Further, the typewriter I was using broke while preparing this document and I had to use another with different typeset.